*Law Offices of*
***BONNETT, FAIRBOURN,***
***FRIEDMAN & BALINT, P.C.***
*2325 East Camelback Road, Suite 300*
*Phoenix, Arizona 85016*
*(602) 274-1100*
*Wendy J. Harrison (014461)*
*wharrison@bffb.com*
*Ty D. Frankel (027179)*
*tfrankel@bffb.com*
*Attorneys for Plaintiff*

IN THE UNITED STATES DISTRICT COURT

DISTRICT OF ARIZONA

| | |
|---|---|
| ABDELMUNIM M. KHALIL,<br><br>          Plaintiff,<br>   v.<br><br>AAA CAB SERVICE, INC., an Arizona Corporation, d/b/a AAA YELLOW CAB CO., AAA, YELLOW, COURIER, CHECKER, NEAL'S, TLC, FIESTA, AAA SEDAN, AGUILA'S; H&M ENTERPRISES, INC., an Arizona Corporation; YELLOW CAB CO., an Arizona Corporation; MIR MASOOD SHAMSA and AHOU SHAMSA, husband and wife; HOSSEIN DIBAZAR and LEILA DIBAZAR, husband and wife; JACK GILMET and JANE DOE GILMET, husband and wife.<br><br>          Defendants. | Case No.<br><br>**COMPLAINT**<br><br>**[JURY TRIAL DEMANDED]** |

Plaintiff Abdelmunim M. Khalil ("Plaintiff"), alleges the following for his Complaint against AAA Cab Service, Inc., d/b/a AAA Yellow Cab, Co., AAA, Yellow, Courier, Checker, Neal's, TLC, Fiesta, AAA Sedan, and Aguila's; H&M Enterprises, Inc.; Yellow Cab Co.; Mir Masood Shamsa; Ahou Shamsa; Hossein Dibazar; Leila Dibazar; Jack Gilmet; and Jane Doe Gilmet (collectively "Defendants" or "AAA Yellow Cab"):

I.     NATURE OF THE CASE

1.     Plaintiff brings this action against Defendants for their failure to pay minimum wage in violation of the Fair Labor Standards Act, 29 U.S.C. §§ 201–219 ("FLSA") and the Arizona Wage Statute, A.R.S. §§ 23-350 – 23-355; 23-363 – 23-364.

2.     For at least three years prior to the filing of this action (the "Liability Period"), Defendants have knowingly misclassified Plaintiff as an independent contractor and failed to pay him the statutorily required minimum wage.

3.     Defendants operate a taxicab service at Phoenix Sky Harbor International Airport pursuant to a contract Defendants have with the City of Phoenix, which mandates that Defendants adhere to specific requirements for their drivers and vehicles for the privilege of operating at the airport.

4.     To facilitate Defendants' business as a taxicab service and fulfill the obligations under the City of Phoenix contract for operation at Phoenix Sky Harbor International Airport, Defendants hired Plaintiff to operate a taxicab at the airport.

5.     Plaintiff had a lease agreement with Defendants to drive one of Defendants' taxicabs at Phoenix Sky Harbor International Airport.

6.     Throughout the Liability Period, Defendants knowingly misclassified Plaintiff as an independent contractor and failed to pay him the statutorily required minimum wage.

7.     This knowing misclassification occurred despite the significant control and rules imposed by Defendants on Plaintiff, which Defendants had to impose at least in part to comply with the requirements for operation at Phoenix Sky Harbor International Airport set forth in Defendants' contract with the City of Phoenix.

8.     This wage scheme perpetrated by Defendants was designed to maximize their profits at the expense of drivers like Plaintiff, many of whom are immigrants and refugees.

9.     This wage scheme is a common practice among taxi cab companies operating at Phoenix Sky Harbor International Airport because the companies operating at

the airport exercise significant control over their drivers at least in part to comply with the requirements in the contract with the City of Phoenix that grants them the privilege for operating there.

10. In fact, a nearly identical action was filed by drivers for another taxicab service operating at Phoenix Sky Harbor International Airport pursuant to a contract with the City of Phoenix to recover allegedly unpaid minimum wage compensation and was conditionally certified as a collective action in the District Court of Arizona. *See Bogor v. American Pony Express, Inc.*, No. 09-2260-PHX-JAT, 2010 WL 1962465 (D. Ariz. May 17, 2010).

## II.   JURISDICTION AND VENUE

11. This Court has jurisdiction over the subject matter and the parties hereto under 29 U.S.C. § 216(b), and 28 U.S.C. § 1331.

12. Plaintiff's state law claim is sufficiently related to the FLSA claim that it forms part of the same case or controversy. This Court therefore has supplemental jurisdiction over Plaintiff's claims under the Arizona Wage Statute pursuant to 28 U.S.C. § 1367.

13. Venue is proper under 28 U.S.C. §§ 1391(b) and (c) because Defendants employed Plaintiff in Maricopa County, Arizona; Defendants conduct business in that county; and all or a substantial part of the events or omissions giving rise to the claims occurred in this district.

## III.   PARTIES

14. At all relevant times, Plaintiff Abdelmunim M. Khalil resided in Maricopa County, Arizona. From in or around 2010 to in or around August 2013, Plaintiff was employed full-time by Defendants as a taxicab driver. As a taxicab driver for Defendants, Plaintiff was responsible for picking up passengers at Phoenix Sky Harbor International Airport and driving them to their destinations. Plaintiff hereby consents to bring this action for unpaid minimum wages against Defendants.

15. Defendant AAA Cab Service, Inc. is an Arizona Corporation, authorized to do business in Arizona. AAA Cab Service, Inc. is a taxicab service that has a contract with the City of Phoenix to operate taxicabs at Phoenix Sky Harbor International Airport. It is responsible for having drivers at the airport at all times, in order to provide transportation service to airport travelers. AAA Cab Service, Inc. is an employer as defined in 29 U.S.C. § 203(d). Upon information and belief, AAA Cab Service, Inc. does business as AAA Yellow Cab Co., AAA, Yellow, Courier, Checker, Neal's, TLC, Fiesta, AAA Sedan, and Aguila's.

16. Upon information and belief, H&M Enterprises, Inc., doing business as Yellow Cab, is an Arizona Corporation affiliated with AAA Cab Service, Inc., authorized to do business in Arizona. Upon information and belief, H&M Enterprises, Inc., doing business as Yellow Cab, is a taxicab service that has a contract with the City of Phoenix to operate taxicabs at Phoenix Sky Harbor International Airport. It is responsible for having drivers at the airport at all times, in order to provide transportation service to airport travelers. H&M Enterprises, Inc., doing business as Yellow Cab, is an employer as defined in 29 U.S.C. § 203(d).

17. Defendants Mir Masood Shamsa and Ahou Shamsa are husband and wife. They have caused events to take place giving rise to this complaint as to which their marital community is fully liable. Mir Masood Shamsa is the President and Director of AAA Cab Service, Inc. He is also the Vice President, Secretary and Director of H&M Enterprises, Inc., doing business as Yellow Cab.

18. Defendants Hossein Dibazar and Leila Dibazar are husband and wife. They have caused events to take place giving rise to this complaint as to which their marital community is fully liable. Hossein Dibazar is the Vice-President, Secretary and Director of AAA Cab Service, Inc. He is also the President, Treasurer and Director of H&M Enterprises, Inc., doing business as Yellow Cab.

19. Defendants Jack Gilmet and Jane Doe Gilmet are husband and wife. Jane Doe Gilmet is a fictitious name for Jack Gilmet's wife. When her true name has been

ascertained, this Complaint shall be amended accordingly. Jack Gilmet and Jane Doe Gilmet have caused events to take place giving rise to this Complaint as to which their marital community is fully liable. Upon information and belief, Jack Gilmet is the Director of Transportation of AAA Cab Service, Inc.

20. Under the FLSA, Defendants Mir Masood Shamsa, Hossein Dibazar, and Jack Gilmet are employers. The FLSA defines an "employer" as any individual who acts directly or indirectly in the interest of an employer in relation to an employee. Mir Masood Shamsa and Hossein Dibazar, as President, Vice-President, Secretary, and Director of AAA Cab Service, Inc., set policy with regards to the amount and manner of compensation of the company's drivers. They similarly set policy for H&M Enterprises, Inc., doing business as Yellow Cab, in their respective roles as President, Treasurer, Secretary, Vice-President, and Director. Jack Gilmet, as the Director of Transportation for AAA Yellow Cab, directed the day-to-day labor of the drivers. Thus, as persons who acted in the interest of AAA Cab Service, Inc. and/or H&M Enterprises, Inc., doing business as Yellow Cab, in relation to the Defendant companies' drivers, each are subject to individual liability as employers under the FLSA.

21. Plaintiff was an employee as defined in 29 U.S.C. § 203(e)(1), and was a non-exempt employee under 29 U.S.C. § 213(a)(1) and 29 C.F.R. part 541.

22. At all relevant times, Defendants have been engaged in interstate commerce and have been an enterprise whose gross annual volume of sales made or business done is greater than $500,000.

## IV. FACTUAL BACKGROUND

### The Airport Contract

23. Defendants entered into a Contract with the City of Phoenix, granting Defendants the right to operate a certain number of taxis at Phoenix Sky Harbor International Airport in exchange for payment of fees.

24. Under the contract with the City of Phoenix granting Defendants the right to operate a taxicab service at Phoenix Sky Harbor International Airport, Defendants agreed

to comply with strict rules in connection with their operation of a taxicab service at the airport.

25. Defendants agreed to have a certain percentage of their taxis available at the airport at all times, maintain vehicles satisfying specific criteria, and ensure that drivers met detailed requirements related to dress and hygiene, among others.

### **Defendants' Exercise Significant Control Over Plaintiff to Comply With the Contract to Operate at the Airport**

26. Defendants hired Plaintiff in or around 2010 to work as a taxicab driver servicing Phoenix Sky Harbor International Airport, and Plaintiff performed the core function of Defendants' taxi business at the airport.

27. To satisfy the stringent obligations of the Contract with the City of Phoenix outlining Defendants' requirements for operation at the airport outlined above (*see supra* ¶¶ 23-25), Defendants exercised significant control over Plaintiff.

28. Upon being hired as a driver for Defendants, Defendants required Plaintiff to participate in training provided by Defendants regarding the rules and regulations at the airport.

29. Defendants also required Plaintiff to participate in on-the-road training with other drivers for Defendants, who trained Plaintiff regarding how to treat passengers in accordance with Defendants' policies and what is required for appropriate entry at the airport.

30. The requirements imposed by Defendants on Plaintiff to control his employment were many. For example:

    a. Defendants required that Plaintiff drive a taxicab owned and insured by Defendants and carrying the name and logo of the Defendant companies;

    b. Defendants required Plaintiff to pick up passengers at the airport only;

    c. Defendants prohibited Plaintiff from picking up street passengers;

    d. Defendants required that Plaintiff accept credit card payments;

    e. Defendants required that Plaintiff wear a collared shirt and close-toed shoes;

  f. Defendants required that Plaintiff maintain a polite and courteous demeanor when dealing with passengers;

  g. Defendants required that Plaintiff pay the lease for their taxicabs and perform maintenance for their taxicabs at Defendants' main office location in Phoenix, Arizona;

  h. Because Defendants' contract with the City of Phoenix required that 85% of its taxicab fleet be at the airport at all times, Defendants required that Plaintiff report directly to the airport when requested to do so;

  i. Defendants assigned Plaintiff a particular cab;

  j. Although Plaintiff could share the particular cab he was assigned with another driver, that driver had to be approved by Defendants; and

  k. To drive taxicabs at the airport, Plaintiff could only receive a permit through Defendants and with Defendants' approval.

  31. Failure to comply with any of the requirements set forth by Defendants, including but not limited to those mandated by the City of Phoenix contract for operation of a taxicab service at Phoenix Sky Harbor International Airport, resulted in a driver's discipline and/or termination by Defendants.

### Plaintiff Earned Below the Minimum Wage

  32. Plaintiff's employment with Defendants ended in or around August 2013, but Defendants failed to pay Plaintiff all wages to which Plaintiff was entitled pursuant to the FLSA and Arizona Wage Statute.

  33. Despite exercising extensive control over Plaintiff by imposing detailed rules and regulations on them, Defendants circumvented their wage obligations by falsely classifying drivers as "independent contractors."

  34. Rather than paying Plaintiff the wages required by law, Defendants charged Plaintiff approximately $854-$889 per week to operate a taxi at Phoenix Sky Harbor International Airport throughout the Liability Period.

35.     Plaintiff retained as compensation only the fares that were received after they paid Defendants for the lease and other expenses each week.

36.     This scheme resulted in Plaintiff and earning significantly below the minimum wage.

37.     While working for Defendants from in or around 2010 to in or around August 2013, Plaintiff often earned barely enough in fares to cover the taxi lease he was required to pay to Defendants.

38.     Where, as here, an employer does not maintain adequate time records, back pay can be based on the employees' reasonable estimation.  *See Brock v. Seto*, 790 F.2d 1446, 1448 (9th Cir. 1986).

39.     This is because it is the employer's duty to keep accurate and complete records.  29 U.S.C. § 211(c); 29 C.F.R. § 516.

40.     Plaintiff worked on average twelve to eighteen hours per day when he drove for Defendants during the Liability Period at Phoenix Sky Harbor International Airport.

41.     The only time period during which Plaintiff earned more than the statutorily required minimum wage was from approximately mid-October through approximately Thanksgiving in each of the years during the Liability Period when Plaintiff was driving a taxicab for Defendants at the airport.

42.     During all other time periods within the Liability Period when Plaintiff was driving a taxicab for Defendants at the airport, Plaintiff earned less than the statutorily required minimum wage.

43.     The amount Plaintiff earned during the Liability Period fluctuated depending on the season.

44.     Upon information and belief, the slow season in 2010, 2011, 2012 and 2013 was typically from approximately Memorial Day through approximately Labor Day and in mid December.  During this slow season, Plaintiff typically drove not less than twelve hours per day for four days a week, earning approximately $135 per day and only $1.25

per hour and at times earning such a low amount that he could not cover the cost of the lease he was required to pay Defendants.

45. Upon information and belief, the moderately busy season in 2010, 2011, 2012 and 2013 was typically from approximately Christmas through approximately mid-January, approximately the end of March through approximately Easter, approximately Easter through approximately Memorial Day, approximately Labor Day through approximately mid October, and approximately Thanksgiving through mid December. During this moderately busy season, Plaintiff typically drove not less than twelve hours per day for four days a week, earning approximately $168 per day and $3.50 per hour.

46. Upon information and belief, the busy season in 2010, 2011, 2012 and 2013 was typically from approximately mid January through the end of March and from approximately mid October through approximately Thanksgiving.  Plaintiff's average wages typically exceeded the minimum wage from approximately mid October through approximately Thanksgiving.  But from approximately mid January through approximately the end of March, Plaintiff typically drove not less than sixteen hours per day and earned approximately $247 per day and only $7.00 per hour.

47. Based on these seasonal fluctuations, Plaintiff – on average during the Liability Period – worked approximately fourteen hours per day for approximately $175 per day, amounting to approximately $3.20 per hour, which is well below the minimum wage.

### V.   COUNT ONE

**(Failure to Pay Minimum Wage – Fair Labor Standards Act, 29 U.S.C. § 206)**

48. Plaintiff incorporates by reference all of the above allegations as though fully set forth herein.

49. Plaintiff was a non-exempt employee entitled to the statutorily mandated minimum hourly wage.

50. Defendants were an employer.

51. Defendants failed to pay minimum wage to Plaintiff during his employment.

52. Plaintiff's total compensation divided by total hours worked was less than minimum wage.

53. Defendants' failure to pay minimum wage to Plaintiff was willful. Defendants knew Plaintiff was not earning an average hourly wage at least equal to the required minimum wage and had no reason to believe their failure to pay minimum wage was not a violation of the FLSA.

54. Plaintiff is entitled to statutory remedies provided pursuant to 29 U.S.C. § 216(b), including but not limited to liquidated damages and attorneys' fees.

## VI.   COUNT TWO

### (Failure to Pay Timely Wages Due – Arizona Wage Statute)

55. Plaintiff incorporates by reference all of the above allegations as though fully set forth herein.

56. Defendants were aware of their obligation to pay timely wages pursuant to A.R.S. §§ 23-350 – 23-355.

57. Defendants were aware that they were obligated to pay all wages due to Plaintiff.

58. Defendants failed to timely pay Plaintiff his wages due without a good faith basis for withholding wages.

59. Defendants have willfully failed and refused to timely pay wages due to Plaintiff.  As a result of Defendants' unlawful acts, Plaintiff is entitled to the statutory remedies provided pursuant to A.R.S. § 23-355.

## VII.   COUNT THREE

### (Failure to Pay Minimum Wage – Arizona Minimum Wage Law)

60. Plaintiff incorporates by reference all of the above allegations as though fully set forth herein.

61. Defendants were aware of their obligation to pay state minimum wages pursuant to A.R.S. § 23-363.

62. Defendants failed to pay minimum wage as required by state law.

63.     Defendants have willfully failed to pay minimum wage due to Plaintiff. As a result of Defendants' unlawful acts, Plaintiff is entitled to the statutory remedies provided pursuant to A.R.S. § 23-364.

## VIII.   REQUESTED RELIEF

WHEREFORE, the Plaintiff, individually and on behalf of all others similarly situated, prays:

A.     For the Court to declare and find that the Defendants committed one or more of the following acts:

   i.     violated minimum wage provisions of the FLSA, 29 U.S.C. § 206, by failing to pay minimum wage to Plaintiff;

   ii.    willfully violated minimum wage provisions of the FLSA, 29 U.S.C. § 206; and

   iii.   willfully violated the Arizona Wage Statute by failing to timely pay all wages due to Plaintiff, as well as willfully failing to pay him the state minimum wage pursuant to A.R.S. §§ 23-350 et seq. and 23-363 et seq.;

B.     For the Court to award compensatory damages, including liquidated damages pursuant to 29 U.S.C. § 216(b) and/or treble damages pursuant to A.R.S. § 23-355, to be determined at trial;

C.     For the Court to award unpaid minimum wages, plus an additional amount equal to twice the unpaid wages pursuant to A.R.S. § 23-364, to be determined at trial;

D.     For the Court to award restitution;

E.     For the Court to award Plaintiff's reasonable attorneys' fees and costs pursuant to 29 U.S.C. § 216(b), A.R.S. § 23-364 (G), and A.R.S. §§ 12-341 and 12-341.01;

F.     For the Court to award pre- and post-judgment interest;

G.     For the Court to award Plaintiff's resulting consequential damages, in an amount to be proven at trial; and,

H. For such other monetary, injunctive, equitable, and declaratory relief as the Court deems just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury on all issues so triable.

DATED: October 22, 2013.

>BONNETT, FAIRBOURN, FRIEDMAN & BALINT, P.C.
>
>By /s/ Ty D. Frankel
>    Wendy J. Harrison
>    Ty D. Frankel
>    2325 E. Camelback Road, Ste. 300
>    Phoenix, Arizona 85016
>    Telephone: 602-274-1100
>    Facsimile: 602-274-1199
>    Attorneys for Plaintiff